UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 06-289 (RMC) |
| | ) | |
| CARLOS MILLER | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS STATEMENTS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to Defendant's Motion to Suppress Statements ("Defendant's Mot."). In support of this opposition, the Government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

**I.  FACTS**

A Grand Jury has returned an indictment charging defendant with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count 1); unlawful possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c) (Count 2); and using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 3). The Government expects the evidence at trial to prove that on September 1, 2006, members of Metropolitan Police Department's Narcotics and Special Investigations Division executed a District of Columbia Superior Court-ordered search warrant at 857 21st Street, N.E., Apt. #1, Washington, D.C. Upon entering the apartment, police found three people inside, including defendant's wife, Veronica Miller, who is also the lessee of the

apartment, and two other people, neither whom lived there. Upon coming into contact with police, Veronica Miller stated that her "husband" had just left the apartment and would soon return. A search of the apartment by police located, in the dining room inside the bottom drawer of a clear, two-drawer storage container, 118 small ziplocks of heroin; a large ziplock bag containing a smaller bag with approximately 22 grams of heroin; six additional small blue ziplocks of heroin; numerous razor blades; a digital scale; drug packaging material, consisting of numerous empty small ziplocks that matched the 118 ziplocks of heroin, and rubber bands; and various personal effects belonging to defendant, including a photo identification bearing defendant's picture, and three envelopes addressed to defendant enclosing personal papers that were also addressed to defendant. In addition, police located a man's wallet and several additional personal papers addressed to defendant on top of a table located in the dining room, and additional numerous empty ziplocks in a brown paper bag on top of the storage container.

   Further, inside the only bedroom in the apartment, police officers located, underneath some clothes inside a laundry basket sitting on the floor next to the bed, a .38 caliber Derringer handgun loaded with two rounds of .38 ammunition; an additional three rounds of .38 caliber ammunition inside a dresser drawer; a spent bullet in plain view on top of the dresser; $5,000 U.S. currency inside a sock in a small drawer in a nightstand on the right side of the bed; and a paycheck bearing defendant's name on a shelf next to the bed. Police also located, inside a kitchen cabinet, a bottle of quinine.

   Defendant was not present during the execution of the search warrant. However, while police were searching the apartment, he apparently called his wife, several times. During one of the phone calls, Veronica Miller told defendant that the police were at the apartment and that she

was in handcuffs. Within several minutes, defendant arrived at the apartment, and police stopped him just outside and advised him that he was under arrest for the drugs and the gun found in the apartment. Defendant immediately volunteered that anything the police found inside the apartment belonged to him and that his wife did not know anything about it. Defendant was then orally advised of his *Miranda* rights, which he waived. Defendant was then told that if he provided a statement to police admitting that the drugs belonged to him, police would not have to arrest his wife. Defendant agreed. Defendant again was advised of his *Miranda* rights, this time in writing utilizing a PD 47 rights card. Defendant then waived his rights a second time by answering the questions and signing the rights card, then provided a short, written statement to police in which he wrote the following: "I Carlos Miller, whatever the police found in my house 857 21 St. N.E. # 1[,] that was illegal can be charged to me, my wife knows nothing about anything illegal." At the end of his statement defendant dated it ("9-1-06"), then was asked in writing whether he was forced to write the statement. Defendant answered, "NO," and initialed his answer. Although he was asked by police, defendant refused to provide a videotaped statement to them.

## II.    ARGUMENT

Defendant has moved to suppress the oral and written statements he made to police subsequent to his arrest. Defendant asserts that there are three bases upon which the Court should suppress these statements: 1) police lacked probable cause to arrest defendant, thus, the statements were the "fruits" of an unlawful arrest; 2) the statements were taken in violation of defendant's *Miranda* rights, as defendant had not validly waived his rights prior to making these statements to police; and 3) the statements were involuntary and thus violative of defendant's

Fifth Amendment Rights. All of defendant's arguments are without merit; therefore, his motion to suppress statements should be denied.

### A.    Defendant's Arrest Was Based Upon Clear Probable Cause.

At the outset, defendant claims that police did not have probable cause to arrest him. This claim is groundless. "Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)); *see also United States v. Wesley*, 293 F.3d 541, 545 (D.C. Cir. 2002) (same) (quotations and citations omitted). The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed. *Illinois v. Gates*, 462 U.S. 213, 246 (1983) (internal quotation marks omitted); *see also United States v. Caroline,* 791 F.2d 197, 201 (D.C. Cir. 1986) ("Only the probability, and not a prima facie showing of criminal activity is the standard.") (citation omitted). Further, in determining whether there was probable cause to make an arrest, a court should evaluate the "totality of the circumstances" surrounding the arrest. *Gates,* 462 U.S. at 230. A "totality" analysis is particularly suited to these determinations because they "are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Id.* (internal quotation marks omitted). Further, courts evaluate the totality of circumstances "not only from the perspective of a 'prudent man,' but also from the particular viewpoint of an officer involved in the search or seizure" in recognition of the fact that "[l]aw enforcement officers naturally reach conclusions based on their training and experience."

4

*United States v. Prandy-Binett*, 995 F.2d 1069, 1071 (D.C. Cir. 1993) (citations omitted), *cert. denied*, 510 U.S. 1167 (1994).

In the instant case, police had ample probable cause to effect defendant's arrest on September 1, 2006. Indeed, although defendant was not inside the apartment when police executed the search warrant, there was considerable evidence that defendant was in constructive possession of all the contraband found therein. First, although defendant does not acknowledge as much in his motion, he clearly lived in the apartment along with his wife, the lessee of the residence.[1] Evidence here that defendant actually lived in the apartment and was not just a casual visitor is illustrated not only by his special relationship with the lessee, but also the fact that his photo identification and personal papers bearing the apartment's address were located throughout the apartment. *See United States v. Holland*, 445 F.2d 701, 703 (D.C. Cir. 1971) ("[i]f an inference of constructive possession must be made, the jury must have before it information about the regularity with which the person in question occupied the place and about his special relationship with the owner or renter"); *and see United States v. Gomez*, 431 F.3d 818 (D.C. Cir. 2005) (holding that ten unframed photographs of the defendant found on top of a stereo showed that her link to the apartment, and drugs found therein, was more than casual); *United States v. Staten*, 581 F.2d 878, 885 (D.C. Cir. 1978). Therefore, defendant was in a position to exercise dominion and control over the contraband. *See Holland*, 445 F.2d at 703 ("constructive possession means being in a position to exercise dominion or control over a thing").

Second, evidence that defendant constructively possessed the drugs and drug

---

[1] Significantly, in his written statement to police defendant wrote that "whatever the police found in ***my*** house 857 21 St. N.E. #1 . . . ." Thus, at least at the time that he had been placed under arrest, defendant acknowledged that he lived in the apartment herein discussed.

5

paraphernalia that were found in the plastic container in the dining room is supported by the fact that these items were found along with defendant's personal belongings, including his pictured identification card and several letters addressed to him. Meanwhile, there were no personal effects belonging to defendant's wife or any other person that were found in the same drawer. *See United States v. Dykes*, 406 F.3d 717, 722 (D.C. Cir. 2005) (finding that defendant lived in a bedroom and had constructive possession over its contents where the only personal papers found in the room had defendant's name on them); *see also Davis v. United States*, 623 A.2d 601, 603 (D.C. 1995) (affirming finding of constructive possession of drugs recovered from bedroom containing clothing and personal papers bearing the defendant's name).

      Third, given the fact that the gun was found next to the bed in the only bedroom in the apartment, a spent round was located on top of a dresser and additional ammunition was found in a bedside drawer in the room, and additional personal papers belonging to defendant were also found in the room, police could have reasonably presumed that defendant was, at least jointly, in possession of all these items. *See, e.g., Guishard v. United States*, 669 A.2d 1306 (D.C. 1995) (holding that there was sufficient evidence to establish that both defendants were in constructive possession of a gun and drugs because personal papers recovered from the bedroom and elsewhere, along with testimony, established that each defendant was at least a part-time resident of the apartment, some of the personal papers were found on top of the dresser where the gun was hidden in a top drawer, and each defendant was just steps away from the dresser when they were selling drugs).

      A review of the totality of circumstances in this case establishes generously that there was "a fair probability" that, in arresting defendant, the officers were arresting someone who had been involved in criminal conduct. *Gates*, 462 U.S. at 246. Because police possessed such an

abundance of probable cause to arrest defendant at the time they so did, the claim in defendant's motion to the contrary is without merit.

      **B.**      **Defendant's Statements to Police Were Not Obtained In Violation of *Miranda***

As previously indicated, defendant also complains that the oral and written statements he provided to police were made in violation of his *Miranda* rights, as he had not validly waived these rights prior to the time he provided both statements to police. Defendant's Mot., at 1. However, as established below, defendant's oral statement to police was not subject to the strictures of *Miranda*, because defendant was not subject to interrogation at the time the statement was made. Further, defendant's written statement to police was in fact made after police had advised him both orally and in writing of his *Miranda* rights, and defendant knowingly and intelligently waived those rights. Consequently, defendant's claims with regard to both of his statements are without merit and therefore should be denied. A separate discussion of each of defendant's statements follows below.

      *1.*      *Defendant's oral statement to police was not subject to Miranda.*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that "in the context of 'custodial interrogation'" certain procedural safeguards – namely, advising the accused of his right to remain silent and to have an attorney present – are necessary to protect a defendant's Fifth Amendment privilege against self-incrimination. *Id.* at 444, 479; *accord Rhode Island v. Innis*, 446 U.S. 291, 297 (1980); *see also Dickerson v. United States*, 530 U.S. 428 (2000). Thus, before *Miranda's* procedural safeguards come into play, the suspect must be *both* in custody *and* subject to interrogation. *Innis*, 446 U.S. at 298. Consequently, where a person is "in custody," but not subject to "interrogation," *Miranda* is not implicated. *Innis*, 446 U.S. at 300-01.

"Interrogation," in the context of *Miranda* analysis, means "words or actions . . . that the police should know are likely to elicit an incriminating response from the suspect." *Id.* 446 U.S. at 301. Moreover, because *Miranda* is triggered only where there is interrogation, statements spontaneously volunteered by a subject are not subject to *Miranda*. *See United States v. Samuels*, 938 F.2d 875, 881 (D.C. Cir. 1989) (volunteered and spontaneous statements are admissible without *Miranda* warnings if not made in response to police questioning); *Bosley v. United States*, 426 F.2d 1257, 1261 (D.C. Cir. 1970) (*Miranda* permits the admissibility of a volunteered statement not the result of custodial interrogation); *United States v. Black*, 932 F. Supp. 327, 330 (D.D.C. 1996) (spontaneous statements by defendant in custody made prior to *Miranda* rights were admissible).

In the instant case, defendant contends that he was under arrest and subject to police interrogation when he made his initial, oral statement to police. Therefore, he asserts, police were required to advise him of his *Miranda* rights, which then required a valid waiver from defendant in order for such statement to be lawfully obtained. *See generally* Defendant's Mot. The Government concedes here that defendant was under arrest at the time that defendant provided this statement. However, defendant was not subject to any police interrogation. Rather, defendant's statement was volunteered and spontaneous, and not responsive to any questioning by police. Therefore, defendant was not entitled to receive *Miranda* warnings prior to making his statement. *See Samuels*, 938 F.2d at 881; *Bosley*, 426 F.2d at 1261.

Instead of being made in response to interrogation, the evidence here reflects that defendant's oral statement was made in the context of the telephone call that his wife had made to him after the apartment had been searched and she was placed in handcuffs. Within minutes after that phone call, defendant arrived at home and was met by police, who arrested him outside

of his residence. While being placed under arrest, defendant spontaneously told police that any contraband found in the apartment was his and that his wife had nothing to do with it. Clearly, defendant volunteered this statement in direct response to the information he received from his wife over the phone and out of concern for her well-being. Certainly, it was not in response to any question posed to defendant by police, and there is no evidence to suggest otherwise. Instead, defendant baldly asserts, without offering a factual proffer, that the remark was in response to police questioning. Because defendant was not subjected to interrogation at the time he made this oral statement to police, *Miranda* does not apply. Consequently, defendant's motion seeking its suppression is without merit and should be denied.

> 2. ***Defendant's written statement was preceded by both oral and written Miranda warnings and a subsequent waiver of those rights***.

As stated above, defendant asserts that his written statement to police was taken in violation of *Miranda*, because defendant had not validly waived his rights prior to making the statement. Defendant's Mot., at 1-2. Defendant fails to point to any specific facts to support this bare claim. To the contrary, the evidence reflects that, subsequent to his spontaneous oral statement, a detective orally advised defendant of his *Miranda* rights, and defendant orally waived them. Immediately thereafter, another detective advised defendant of his rights a second time, this time using a PD 47 rights card. Once defendant was advised using the rights card, he was asked to sign it to evidence that he had been read his rights, understood them, and was willing to answer questions without the presence of an attorney. Defendant did sign the card, and it was also signed by two detectives who witnessed defendant waive his rights. Immediately thereafter, defendant provided a written statement to police. In his own handwriting, defendant wrote that "whatever the police found in my house 857 21 St. N.E. # 1 that was illegal can be

9

...

charged to me, my wife knows nothing about anything illegal." Defendant then signed the statement and indicated the date that he wrote it ("9-1-06"). Finally, one officer wrote: "Were you force[d] to make this statement?" Defendant answered, "NO," and placed his initials next to his answer.

In spite of all the foregoing, defendant nevertheless maintains that he did not validly waive his *Miranda* rights prior to giving a statement to police. Defendant indeed turns a blind eye to the evidence in this case, yet he points to no specific facts himself to support his contention that he did not validly waive his rights. As such, defendant's claim in this regard is wholly without merit and therefore should be summarily denied.

### C. Defendant's Statements Were Voluntarily Made To Police

The final claim in defendant's motion seeks to suppress his statements to police on the separate ground that "the totality of the circumstances surrounding [defendant's] statements rendered his alleged statements involuntary." Defendant's Motion, at 3. This claim too is baseless and therefore should be denied.

A statement is "voluntary" for purposes of due process so long as it is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte* , 412 U.S. 218, 225 (1973) (citing *Columbe v. Connecticut*, 367 U.S. 568, 601 (1961)). Moreover, for a statement to be involuntary, it must have been caused by government overreaching. *See Colorado v. Connally*, 479 U.S. 157, 164 (1986) ("[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"); *see also Martin v. United States*, 567 A.2d 896, 907 (D.C. 1989) ([w]ithout a showing of coercive police activity . . . there is not a basis for concluding that [the defendant's] confession was involuntary") (internal quotations omitted).

10

The test for determining the voluntariness of a statement is whether, under the totality of the circumstances, the "will [of the suspect] has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225; *See Rogers v. Richmond*, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-detemined"). Generally, the factors to be considered for determining the voluntariness of a statement include the circumstances surrounding the questioning, the accused's age, education, level of intelligence, prior experience with the law, his physical and mental condition at the time the statement was made, any factors showing coercion or trickery, and the delay between the suspect's arrest and confession. *Id.* at 226. (citations omitted); *see also Beasley v. United States*, 512 A.2d 1007, 1015 (D.C. 1986) (adding among the factors "duration of the questioning, and any allegations of physical coercion"). *See, e.g.*, *United States v. Yunis*, 859 F.2d 953, 961 (D.C. Cir. 1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); *and see Harris v. Dugger*, 874 F.2d 756, 759-62 (11th Cir.) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation), *cert. denied*, 493 U.S. 1011 (1989); *United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that he would launch full-scale investigation if defendant did not cooperate insufficient to render statements involuntary), *cert. denied*, 486 U.S. 1010 (1988).

In the instant case, defendant arrived on the scene on his own volition, after his wife contacted him and advised that their apartment had been searched and she was in police custody. Immediately upon his arrival, defendant was placed under arrest by police. Defendant then spontaneously volunteered that any contraband located in the apartment belonged to him.

11

Immediately thereafter, defendant was advised of his rights orally, then in writing. Each time defendant indicated that he understood his rights and waived them, and the second time he did so by executing a PD 47 rights card. After signing the waiver, defendant provided a second, written statement to police, which was almost verbatim to the oral statement he made. With the exception of the brief, one-sentence oral and written statements defendant made to police, he gave no further statements to police, nor did police ask him any questions. Thus, the time that police spent with defendant during which he made statements to them lasted just a couple of minutes.

Considering all the evidence in its totality, it is evident that defendant's statements were voluntarily given. There is nothing in the record suggesting coercive or "overreaching" conduct on the part of the officers. *See Shneckloth*, 412 U.S. at 225-226; *see also Martin v. United States*, 567 A.2d 896, 907 (D.C. 1989) ("[w]ithout a showing of coercive police activity . . . there is not a basis for concluding that [the defendant's] confession was involuntary") (internal quotations omitted). Rather, defendant makes the bare assertion of involuntariness, yet he fails to proffer any facts tending to show that his will was somehow overborne or his capacity for self-determination was critically impaired. Moreover, defendant is a 53-year old adult with no apparent learning disabilities and with over thirty years' prior experience with the law. He has also amassed six convictions during this time. Based upon the facts and circumstances surrounding defendant's statements, there is no basis upon which to conclude that his statements were the product of police overreaching. Because there is no such evidence of coercive conduct with regard to defendant's statements in this case, defendant's contention to the contrary is

without merit and therefore should be denied.[2]

---

[2] Further, although defendant does not raise the issue in his motion, the fact that police told defendant that they would not arrest his wife if he reduced his oral statement to writing did not render the statement involuntary. First, such suggestions of leniency have been found permissible even when they implicate members of a defendant's family, weighing heavily on a defendant's conscience. *See*, *e.g.*, *United States v. Charlton*, 565 F.2d 86, 88-89 (6th Cir. 1977) (where a defendant had been told by agents he would have to tell the what happened if he wanted to keep son out of case, agents repeatedly told the defendant that he did not care about his son, and defendant finally confessed after he was falsely told that his son had been arrested, court stating that merely because the defendant's motivation for confessing was to protect his son "does not, in our judgment, render his confession involuntary or necessitate a finding that he was coerced or that his will was overborne"); *and United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003) (finding that police were not coercive in threatening defendant in drug distribution conspiracy with arresting his sister unless he confessed, because police had sufficient probable cause to arrest sister). *Accord United States v. Duncan*, 857 F. Supp. 852 (D. Utah 1994) (court found insufficient pressure to find coercion where police informed the defendant his girlfriend might get arrested); United States v. Reese, 351 F. Supp. 719 (W.D. Pa. 1972) (court found no improper threat where the defendant charged with bank robbery told that woman with whom he lived would be arrested if defendant did not confess). Moreover, the fact that here defendant had already provided an oral statement to police and his subsequent written statement was merely a reiteration of the first, clearly shows that police were not attempting to elicit a false confession from defendant. *See*, *e.g.*, *Moctar v. United States*, 718 A.2d 1063, 1070 (D.C. 1998) (intentional use of deception or trickery does not render an otherwise voluntary statement involuntary "as long as the means employed are not calculated to produce an untrue statement"); *and Beasley v. United States*, 512 A.2d 1007, 1010, 1011 (upholding voluntariness of confession where defendant was told to "tell the truth"). Thus, the fact that police told defendant that his wife would not be arrested if he wrote down what he had just spoken cannot be said to render his subsequent written statement involuntary.

WHEREFORE, for all the reasons stated above, the United States respectfully submits that defendant's Motion to Suppress Statements is, in all things, lacking in merit and therefore should be denied.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    United States Attorney
    Bar No. 498610

By:    "/s/"
    Donnell W. Turner
    Assistant United States Attorney
    Major Crimes Section, Maryland Bar
    555 4th Street, N.W.  # 4235
    Washington, DC 20004
    Tel. (202) 305-1419
    Fax: (202) 514-6010

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 06-289 (RMC) |
| ) | |
| CARLOS MILLER ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### ORDER

Upon consideration of the Defendant Carlos Miller's Motion to Suppress Statements, the Government's Opposition to said Motion, and the entire record herein, the Court is of the opinion and finds that Defendant's Motion is without merit and should be denied. It is therefore, this ____ day of _____, 200__,

**ORDERED** that the Court's ruling regarding Defendant Carlos Miller's Motion To Suppress Statements be, and hereby is, **DENIED**.

_____
ROSEMARY M. COLLYER
United States District Court Judge