**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 06-289 (RMC)** |
| | : | |
| **CARLOS MILLER** | : | **Sentencing Date: June 1, 2007** |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing in the instant case. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of incarceration within the Guidelines range of 151-188 months.[1]

**I.     BACKGROUND**

On September 1, 2006, at approximately 8:44 a.m., members of Metropolitan Police Department's Narcotics and Special Investigations Division executed a District of Columbia Superior Court-ordered search warrant at 857 21st Street, N.E., Apt. #1, Washington, D.C. Police located within the residence, inside the bottom drawer of a clear, two-drawer storage container found in the dining room area, 118 small ziplock bags of a white powder substance later proved to be heroin. Also found in the same drawer was a larger ziplock bag containing approximately 22 grams of heroin, six small blue ziplocks of heroin, numerous razor blades, and a digital scale. Recovered from the same storage container were numerous empty small ziplocks, which matched those containing the heroin, rubber bands, a photo identification of the Defendant, and mail matter and

---

[1] See section II.B., infra.

1

other personal papers addressed to the Defendant.  Finally, on top of the storage container police found a brown paper bag containing numerous additional small empty ziplocks, also which matched the ziplocks in which the heroin was packaged.

In addition, in the only bedroom in the apartment, police officers located the following: inside a laundry basket underneath a pile of clothing on the floor next to the bed, a .38 caliber Derringer handgun loaded with 2 rounds of .38 ammunition; inside a dresser drawer, an additional two rounds of .38 caliber ammunition; on top of the dresser, a spent bullet; and, on the right side of the bed inside a small drawer, a sock containing $5,000.  Police also located, inside a kitchen cabinet, a bottle of quinine.

The Defendant was not present during the execution of the search warrant.  However, within several minutes, the Defendant arrived at the apartment was subsequently was placed under arrest. Eventually, the Defendant provided a written statement to police in which he admitted that he possessed illegal contraband inside his apartment.

Subsequently, a forensic chemist employed by the DEA analyzed the suspected controlled substances found in the Defendant's apartment on September 1, 2006, and concluded that the 118 small ziplocks contained a total of 16.2 grams of heroin, and that the larger ziplock bag, along with the six small blue ziplocks, contained 23.2 grams of heroin, for a total amount of 39.4 grams. Additionally, an examination of the loaded .38 caliber Derringer gun found in the Defendant's bedroom was determined to be fully functional.  Finally, at trial an expert witness would have testified, in essence, that the quantity, weight, and packaging of the heroin recovered from the Defendant's apartment, particularly when considered with the drug paraphernalia, weapon and ammunition, and money, clearly demonstrate that the Defendant possessed the heroin for the specific

2

purpose and intent of distributing to others, rather than for personal consumption.

## II. SENTENCING CALCULATION

### A. Statutory Minimum/Maximum

The maximum term of incarceration for the charge of Unlawful Possession With Intent to Distribute Heroin, a Class C Felony, is 20 years. In addition, the maximum fine that can be imposed is $1,000,000. See Presentence Report ("PSR") at ¶¶ 88, 98.

### B. United States Sentencing Guidelines ("USSG") Calculation

The PSR writer in this case, U.S. Probation Officer Kelli Cave, has correctly calculated the Defendant's total offense level to be 29 and his criminal history category to be VI. PSR ¶¶ 17-27. This is so because the defendant is classified as a career criminal within the meaning of USSG § 4B1.1(a), by virtue of the undisputed facts that the Defendant a) was at least eighteen years old at the time he committed the instant offense of conviction, b) the instant offense is a felony that is a controlled substance offense; and c) the Defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. See USSG § 4B1.1(a) and (b). Thus, under these calculations, the Defendant's Guideline range for imprisonment for a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) is 151-188 months. USSG Chapter 5, Part A; see PSR ¶¶ 26-41, 89.

In the Defendant's Memorandum in Aid of Sentencing ("Sentencing Memorandum"), he challenges the PSR writer's determination that he is a career criminal within the meaning of USSG § 4B1.1(a). However, the Defendant fails to cite to any provision within the Guidelines, or to any other authority, to support his argument that the Defendant is not a career criminal under the Guidelines, nor can he. Instead, the Defendant makes the blanket assertion that his two prior felony convictions that were used to calculate his status as a career criminal (Attempted Robbery, in 1981,

3

and Distribution of Heroin, in 1997) should not apply because "[o]ne conviction occurred 26 years ago[,] and the other conviction dealt with a very small amount of heroin that was sold to an undercover police officer who solicited the defendant." See Sentencing Memorandum, at 1-2.[2] Yet, nowhere within the Sentencing Guidelines is there an age-of-offense restriction imposed upon an offender's prior felony convictions for purposes of determining whether his convictions qualify under USSG § 4B1.1(a). Nor is there any provision within the Guidelines which takes into account either the seriousness of the prior felony conviction or any of the underlying circumstances of the offense. Rather, under USSG § 4B1.2(c), the term "two prior felony convictions" simply means that "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . ., and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of USSG § 4A1.1(a), (b), or (c). Because the Defendant does not dispute that his prior aforementioned convictions are "prior felony convictions of either a crime of violence or a controlled substance offense" under USSG § 4B1.1(c), and because he is unable to cite to any authority to support his contention that USSG § 4B1.1(a) otherwise does not apply to these convictions, the Defendant is clearly a "career criminal" within the meaning of the Sentencing Guidelines. Therefore, the applicable Guidelines range for imprisonment for the Defendant in this case is 151-188 months.

C.    The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory

---

[2] Significantly, it should be noted that the Defendant's criminal history also includes convictions for Intent to Commit Robbery (1974), and Assault with a Dangerous Weapon (1977). Both of these convictions qualify as prior felony convictions of a crime of violence pursuant to USSG § 4B1.1(a).

4

application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Booker, 543 U.S. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress

and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction.") (emphasis supplied); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their

democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 950. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

**III.    DEFENDANT SHOULD BE SENTENCED TO A TERM OF INCARCERATION AT THE LOW END OF THE APPLICABLE GUIDELINES RANGE OF 151-188 MONTHS**

The government recommends that the Court sentence the Defendant to a term of incarceration at the lowest end of the applicable Guidelines range of 151-188 months. Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but it would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant. United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The Defendant's illegal conduct here is extremely serious and represents a real and present

danger to the community. In this case, within his own home, the Defendant possessed a significant quantity of heroin and he intended to distribute it to others. In addition, at the time the Defendant possessed the heroin, he possessed a loaded .38 caliber handgun. Considering that drugs and drug-related gun violence are the source of the vast majority of crimes in this city and of violence against its citizens, the Defendant's conduct here is reprehensible, and his punishment should communicate to the Defendant in particular, and the community in general, that drug trafficking, especially while armed, will not be tolerated. A Guideline sentence would certainly reflect the seriousness of the Defendant's overall conduct as well as take into account the destructive effect of his conduct on the community.

Furthermore, the Defendant's conduct in this case is illustrative of a pattern of criminal behavior that dates back more than thirty years. As mentioned above, the defendant has prior convictions for Intent to Commit Robbery (1974), Assault With a Dangerous Weapon (1977), Attempted Robbery (1982), and Distribution of Heroin (1997). In addition, he has been convicted twice of Larceny (both in 1972), Attempted Larceny (1981), Possession of Cocaine (1994), and Driving While Intoxicated (1997). Further, he has been arrested and charged with criminal misconduct on thirteen other occasions between 1972 and 2001. Moreover, significantly, the Defendant committed the instant offense, as well as the offenses of Possession of Cocaine in 1994, Distribution of Heroin in 1997, and Driving While Intoxicated in 1997, all while the Defendant was on parole for his 1982 conviction for Attempted Robbery. Thus, the Defendant's criminal history demonstrates that he is indeed a "career criminal" under the Sentencing Guidelines, and further reflects that the Defendant has not learned from his mistakes and is not likely to be rehabilitated in the future. In summary, given the facts and circumstances of this case, the real need to protect the

8

public from such dangerous conduct as that which the Defendant participated, and the Defendant's long criminal history that has not been deterred even by lengthy prison terms, a sentence of incarceration at the low end of the applicable Guideline range of 151-188 months is both reasonable and appropriate.

Finally, it should be noted that the Defendant has already received the benefit of the bargain as a result of accepting the government's generous plea offer in this case. First, the Defendant's Guidelines take into account his early acceptance of responsibility, for which he has received a three-point decrease in his offense level. See PSR ¶ 26. Had the defendant not received this benefit, his Guidelines range for incarceration would have been 210-262 months, rather than 151-188 months. Second, under the terms of the plea agreement, the government waived its right to file an Information, which would have subjected the Defendant to substantially higher statutory penalties pursuant to 18 U.S.C. § 851. Third, had the Defendant gone to trial and been convicted of Count 3 of the Indictment, he would have been subjected to a mandatory minimum sentence, and such sentence would have to run consecutively to any other count of which he was convicted. And, finally, as stated above, the government has agreed to limit its allocution for incarceration to the lowest end of the Defendant's Guidelines. Thus, in light of the generous plea agreement offered by the government and the significant benefits the Defendant has received from the terms of the offer, as well as his acceptance of responsibility, the Defendant has already received all the leniency he should in this case. Indeed, sentencing the defendant within the applicable Guidelines range would certainly take into account the facts and circumstances in the instant case as well as the defendant's lengthy criminal history, it would adequately serve the interests of the community, and it would give both the government and Defendant the benefit of the bargain negotiated.

## IV.     CONCLUSION

In summary, the advisory Guidelines range in this case provides for a reasonable sentence, one that takes into account the relevant sentencing factors set forth in 18 §3553(a).[3] The government therefore respectfully requests that the Court impose a sentence of incarceration at the low end of the applicable Guidelines range of 151-188 months, a term of supervised release as provided by statute, and any other terms and conditions that the Court deems appropriate.

---

[3] It is the government's position that 18 U.S.C. § 3553(a)(2)(1), which directs that the sentencing court consider the "the nature and circumstances of the offense and the history and characteristics of the defendant," should not be read to mean that the sentencing court should take into account all of the defendant's personal characteristics in imposing a sentence of incarceration. Congress, in enacting the Sentencing Reform Act, specifically prohibited certain personal characteristics from being considered in sentencing.  Thus, sentences cannot be based on a defendant's race, sex, national origin, creed or socioeconomic status.  See 28 U.S.C §944(d). Other characteristics can be taken into account only to the extent they are relevant.  Id.  Congress specifically directed that the Commission assure that the guidelines reflected "the general inappropriateness" of considering certain factors, including the defendant's family ties and responsibilities, and community ties, in recommending terms of imprisonment.  28 U.S.C. § 944(e).

Thus while Congress contemplated that a defendant's age, family ties and responsibilities, community ties and similar factors may be appropriately considered with respects to incidents of sentencing other than incarceration, for example, the length and type of community service, the amount of a fine, or the conditions of probation, it recognized that these same factors have no place in determining whether and for how long a defendant should be imprisoned.  We recognize that post-Booker, the Sentencing Guidelines are advisory.  Nevertheless, the Guideline provisions with respect to limitations of factors to be considered in imposing sentence clearly reflect the will on Congress on this issue, see 28 U.S.C. § 944(e), therefore, we respectfully ask that these factors be given appropriate consideration by the Court.

Respectfully,

JEFFREY A. TAYLOR
United States Attorney


/s/

_____

By:    Donnell W. Turner
       Assistant United States Attorney
       Maryland Bar
       Federal Major Crimes Section
       555 4th Street, N.W.  #4235
       Washington, DC 20001
       Tel. (202) 305-1419
       Fax (202) 514-6010

11